UNITED STATES, Appellee

v

ROBERT H. WHITE, Corporal, U. S. Army, Appellant

19 USCMA 338, 41 CMR 338

No. 22,429

March 20, 1970

*Captain William W. Rittenhouse* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Charles W. Schiesser,* and *Captain Thomas R. Maher.*

*Captain James S. Mathews* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Major Edwin P. Wasinger,* and *Captain William R. Steinmetz.*

## Opinion of the Court

DARDEN, Judge:

The issue in this case is whether the trial testimony of the appellant was impermissibly impeached by references to his remembering the offense in question when he was interrogated during a psychiatric examination that was preceded by an incomplete warning of his rights to counsel and against self-incrimination. We hold that unacceptable impeachment occurred.

A general court-martial at Fort Hood, Texas, found the appellant guilty of unpremediated murder and sentenced him to a dishonorable discharge, total forfeitures, and confinement at hard labor for life. The convening authority reduced the period of confinement to thirty years but approved the parts of the sentence relating to the discharge and forfeitures. After the Court of Military Review affirmed the finding and the sentence as reduced, this Court granted review to consider the issue referred to above.

The appellant fatally shot one of his close friends without an obvious reason during an evening at a nightclub in Killeen, Texas. The victim had danced with the appellant's date and the victim had also asked about a $30.00 debt that the appellant owed him. A chaplain testified that the appellant, who had not had anything to drink during the evening of the killing, was a deeply religious man who was not acting normally at the time of the shooting. The company commander and a superior noncommissioned officer of the appellant testified that despite the conviction they would like to have the appellant return to their unit. He had served a voluntary tour in Vietnam, where he was decorated for heroism.

At the trial the appellant described the fatal evening in these words:

". . . I sat at the table and I just sit there; just sit there. I saw them but I didn't hear them, and all of a sudden I was up and I started around the table and he [the victim] came toward me with his hands clenched and, oh, my God — and I just kept hearing that gun. Oh, Oh, Oh, I heard it, but I—then just as I was going out the door and I just know I done done something wrong. And I went to the police station. Oh, God! But I said 'hey' — Oh, My God! — because he was closer to me than he was the rest of them. He was my friend. OH, OH!"

The appellant testified that when he heard the shots he did not know what he was doing and that had he known he would not have shot the victim because the victim was "a good man." He did not remember taking the gun out of his waistband or pulling the trigger.

A psychiatrist who had examined the appellant at the request of the latter's company commander testified in rebuttal for the Government. Before interviewing the appellant the psychiatrist had given him a warning of his rights to counsel and against self-incrimination. Under earlier decisions of this Court, this warning was inadequate in that it did not include full treatment of rights to counsel. United States v Pearson, 17 USCMA 204, 37 CMR 468 (1967); United States v Wood, 17 USCMA 257, 38 CMR 55 (1967); United States v Stanley, 17 USCMA 384, 38 CMR 182 (1968).

On direct examination, Captain Johnson, the psychiatrist, testified that the appellant was sane and did not suffer from a "dissociative reaction" at the time of the shooting. On cross-examination, Captain Johnson stated that an inability to remember could be evidence of a dissociative reaction. On redirect, the following colloquy occurred:

"Q. Captain Johnson, did the accused exhibit any sort of amnesia during your examination?

"A. No, not amnesia. He experienced a great deal of difficulty communicating with me and the others who examined him, but not amnesia in that being as a total inability to remember.

"Q. When you did question him, if you did pursue it, did he then remember?

"A. With difficulty he did."

**339**

Captain Johnson was the last witness in the case, and trial counsel proceeded to argue. His argument included the following:

"Now, the accused says he doesn't recall. The psychiatrist said it took a little prodding, sure, it bothers him and it would bother me if I had done what he did. He doesn't recall, but the psychiatrist said that when he talked to him if you prod him he remembers.

"Gentlemen, you can rest assured he knows what he is facing here today. And a lack of memory can be quite convenient. He knew. He followed that man and he shot him. He didn't have a chance."

When an accused voluntarily submits to a psychiatric examination by psychiatrists of his choice, his ■ acts constitute a qualified waiver of his right to refuse to submit to a psychiatric examination by the Government. In such a case the testimony of a Government psychiatrist about his conclusions on the sanity issue is admissible. United States v Babbidge, 18 USCMA 327, 40 CMR 39 (1969); United States v Wilson, 18 USCMA 400, 40 CMR 112 (1969); United States v Schell, 18 USCMA 410, 40 CMR 122 (1969). The crucial point of the holdings in these cases was summarized in United States v Ross, 19 USCMA 51, 54, 41 CMR 51 (1969):

". . . The significant determinant is that the psychiatric examinations tended to prove not the commission of a crime but whether the accused should be held responsible for it."

The evidence in this case was such that the appellant hardly could have convinced the court he had not killed the victim. The concern here is not with a recitation of incriminating statements made by the appellant relative to his guilt or innocence. Instead, the appellant attempted to defend on the ground of his mental responsibility. He tried to convince the court that his in-

ability to remember the shooting was evidence of a dissociative reaction. The testimony we hold to be prejudicial occurred on redirect examination of the psychiatrist in answer to the question, "When you did question him, if you did pursue *it*, did he then remember?" (Emphasis supplied.) He responded, "With difficulty he did." In his closing argument quoted earlier in this opinion, the trial counsel obviously construed remembering "it" as referring to the shooting that the appellant denied remembering.

Where the principal trial issue is the accused's mental responsibility, we expect that often the conclusions of a Government psychiatrist will be different from those of witnesses introduced by the defense. Such differences are not intrinsically prejudicial despite the accused's having been subjected to psychiatric examination by the Government without a full explanation of his rights to counsel and against self-incrimination. If in this case the psychiatrist had testified only that in ■ his opinion the appellant was capable of remembering at the time of the offense, we would consider his testimony as being within the principles of *Babbidge*, *Wilson*, and *Schell*. The deviation we find here is that the psychiatrist's testimony could have impressed the jury as showing that during the psychiatric examination the utterances of the appellant contradicted those he made at the trial. In *Ross*, *Wilson*, and *Schell* we held that fairness required that the Government have an opportunity to evaluate the mental responsibility of an accused. But specific statements of an accused during such an examination may not be referred to at trial to contradict an accused's trial testimony unless the accused has had complete Article 31, Uniform Code of Military Justice, 10 USC § 831, and *Miranda/Tempia*[1] warnings.

The findings of guilty and the sentence are set aside. The record is returned to the Judge Advocate General

---

[1] Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966); United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967).

of the Army. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting).

Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), applies to custodial interrogation not to a court-directed medical examination of the accused, especially where the examination was, as here, requested by the defense. The United States Court of Appeals for the Seventh Circuit has specifically held that, while good practice suggests that defense counsel be notified of a sanity examination, the accused has no right to the presence of counsel during the examination because it is not a "critical" stage of the proceedings against him. Wax v Pate, 409 F 2d 498 (1969), certiorari denied, 396 US 830, 24 L Ed 2d 81, 90 S Ct 83 (1969). Since the accused's answers may be used against him, he has the right to refuse to answer any questions. He is, therefore, entitled to be informed of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. See United States v Bennett, 7 USCMA 97, 21 CMR 223 (1956). He was so informed in this case. His answers were, therefore, admissible.

I would affirm the decision of the board of review.