UNITED STATES, Appellee

v

KEITH D. JOHNSON, Private U. S. Army, Appellant

Captain Leland M. Stenehjem, Jr., argued the cause for Appellant, Accused. With him on the brief were Colonel Arnold I. Melnick and Captain Gilbert J. Weller.

Captain Joel M. Martel argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain Stan L. Spangler, and Captain M. Douglas Deitchler.

## OPINION OF THE COURT

DARDEN, Chief Judge:

In this case, the accused contends that the Government denied him permission to retain at government expense a civilian psychiatrist to assist in the preparation and presentation of his defense.

Charged with premeditated murder, the accused was represented by appointed counsel, military counsel he selected, and civilian counsel. Civilian counsel was in charge of the defense but was not present at the initial Article 39(a) hearings.

On April 16, 1971, prior to the trial, the accused was interviewed by Major Jeffrey S. Schwam, a military psychiatrist, but elected to remain silent. No psychiatric evaluation could be accomplished. On May 21, 1971, a psychiatric board convened to examine the accused. He again elected to remain silent and refused to communicate at all with the board. The board was unable to reach any conclusions regarding his mental state. These examinations were conducted solely because of the serious nature of the charge against the accused.

The refusal of the accused to communicate with the psychiatric board resulted from the advice of individual military counsel, who believed that he should first discuss the situation with civilian counsel.

At the initial Article 39(a) hearing, the military judge suggested a psychiatric evaluation was in order because of the serious charge against the accused. The Government indicated its willingness to have the accused fully examined before a psychiatric board. During an adjournment of the proceedings, appointed counsel requested, on October 20, 1971, that the Government provide funds to employ a civilian psychiatrist to examine the accused. Counsel withdrew the request 2 days later. On October 22, 1971, the request was renewed by individual military counsel. On October 27, the convening authority denied the request for funds. He noted that the accused had previously "refused to cooperate with a sanity board," thus precluding an evaluation, but offered to convene another board to examine the accused. Individual counsel also sought to have the accused examined by a civilian psychiatric consultant to the local Army hospital. This request was also denied.

When the Article 39(a) hearing reconvened, the defense requested a military and civilian examination of the accused. Alleging that he had been informed by a psychiatrist that reading the accused his rights would inhibit the accused and prevent a diagnosis, individual military counsel stated that the Government had originally offered alternative examinations without any Article 31 warning by either a military psychiatrist or a civil-

ian associate at the Army hospital. Conceding that he may have misunderstood the proffered alternatives, individual military counsel stated that the Government had now withdrawn them and offered only a full psychiatric board examination. As an alternative to this, the defense once more moved for examination of the accused by the civilian associate psychiatrist or to have a civilian psychiatrist employed at government expense for that purpose. The military judge denied the motion, declaring that sufficient grounds had not been shown for the necessity of such an examination and that he had no authority to direct a psychiatric examination by a particular psychiatrist.

Individual counsel then moved for a military psychiatric examination without advising the accused of his Article 31 rights. In connection with this request, counsel stated that discussions with the accused led him to doubt the accused's mental capacity to stand trial. Accepting this as evidence requiring a mental evaluation of the accused, the military judge entered an order directing that the accused be examined psychiatrically and, in order to protect his rights, that the following conditions be imposed:

a. No information secured during the examination or board proceedings was to be publicized in advance of presentation in court or termination of the trial.

b. No person examining the accused was to disclose to the trial counsel the substance of any disclosure made by the accused during the examination.

c. Any report of the examination was not to be related to anyone outside technical medical channels without the approval of the court, and the report was to be submitted to the court upon its completion.

The military judge added that, upon receiving the report, "this court will sanitize it and give the appropriate portions to the government; . . . the government is really only concerned with · . . the three questions [regarding sanity]. If you want a confession you can send the man to the CID right now. We only want an examination to determine his responsibility and capacity, and that's what I am concerned with."

In accordance with the judge's order, the accused was examined by a psychiatric board under the prescribed conditions and found to be both capable and responsible. A copy of the board's findings was furnished to the court. At a final Article 39(a) hearing at which all defense counsel were present, civilian counsel stated that, in view of the lack of provision for the Government to pay for a civilian psychiatric examination and the financial condition of the accused and his family, no civilian psychiatrist had examined the accused. He added, that, in light of the military psychiatric report "coupled with the timing involved, I would say that at this time we would waive any civilian examination of the accused, unless the same could be done today or tomorrow, and I don't think that is possible." Counsel then rejected an offer of a continuance to seek such an examination, again declaring that "we need not at this time pursue it."

Appellate defense counsel contend that the accused's major goal at trial was to obtain an independent, thorough, knowledgeable, and intelligent evaluation of his mental condition and that this goal could be attained only by a civilian psychiatrist acting on behalf of the defense, not on behalf of the Government or the court. Counsel find authority for furnishing the accused with a civilian psychiatrist in 18 U.S.C. § 3006A(e) and paragraph 116, Manual for Courts-Martial, United States, 1969 (Rev.). In addition, they argue that statements made by the accused to military psychiatrists are not privileged, that the reading of Article 31 to the accused inhibits the psychiatrist-patient relationship during an interview, and that their military rank prohibits a meaningful probe of his condition. Finally, they characterize a military psychiatric examination as a means of forced discovery by the Government during the examination.

Paragraphs 121–124, MCM, provide for the convening of a medical board either before, during, or after trial, to determine the mental responsibility and capacity of the accused. The board members do not act for the Government or for the accused. Their objective

"is not to prove by evidence wrested

from a defendant whether he is guilty as charged but, rather, to prove whether a defendant possesses the requisite mentality to be guilty as charged, assuming that his guilt is otherwise established, or whether, legally, he cannot be held criminally responsible, irrespective of what other proof may establish he has done." [United States v Albright, 388 F2d 719, 723 (4th Cir 1968).]

United States v Babbidge, 18 USCMA 327, 331, 40 CMR 39, 43 (1969). In the many records that have passed through this Court, we have observed no tendency on the part of military psychiatrists to favor either the prosecution or the defense. We are satisfied that their determinations are impartial and that they seek not to uncover evidence for the Government but truly to determine the mental condition of the accused. See, for example, the determinations made in United States v Triplett, 21 USCMA 497, 45 CMR 271 (1972), and United States v Washington, 6 USCMA 114, 19 CMR 240 (1955). Military psychiatrists are paid by the Government, but so are defense counsel. We are certain that neither group shirks its professional responsibilities because they are employees of the United States.

Nor is there any testimony that the accused was intimidated because the military psychiatrists were his military superiors. Such an argument is little more than speculation by counsel, as is the one related to the effect of reading Article 31 to the accused at the beginning of the examination. Rather than to stress possible adverse effects on the rapport between the accused and the psychiatrist, counsel's thrust at trial seems to have been that an accused was reluctant to give full information to the psychiatrist because the warning notified him that such information was admissible at his subsequent trial. The commendable order entered by the military judge prevented the Government from having access to such information or seeking to introduce it in evidence. See United States v Babbidge, supra; United States v White, 19 USCMA 338, 41 CMR 338 (1970).

The question presented, then, is not whether a normal military psychiatric evaluation is inadequate in every case or represents only a government viewpoint but whether, after a complete board examination has been had in which the accused's rights have been thoroughly protected and he has been found fully responsible and capable, the accused is also automatically entitled to the employment at government expense of a civilian psychiatrist to examine him and possibly to testify at the trial in his behalf.

■ At the trial, and again at this level, counsel rely on the provisions of 18 U.S.C. § 3006A(e), a part of the Criminal Justice Act of 1964, which permits employment of expert witnesses by the defense on behalf of an indigent accused. But this enactment by its terms applies only to preparation for trial and trial in United States district courts. It has no application in military law. Hutson v United States, 19 USCMA 437, 42 CMR 39 (1970).

Military law does provide for the employment of experts to assist either side in the preparation and presentation of its case. Paragraph 116, MCM, provides:

The provisions of this paragraph are applicable unless otherwise prescribed by regulations of the Secretary of a Department. When the employment of an expert is necessary during a trial by court-martial, the trial counsel, in advance of the employment, will, on the order or permission of the military judge or the president of a special court-martial without a military judge, request the convening authority to authorize the employment and to fix the limit of compensation to be paid the expert. The request should, if practicable, state the compensation that is recommended by the prosecution and the defense. When, in advance of trial, the prosecution or the defense knows that the employment of an expert will be necessary, application should be made to the convening authority for permission to employ the expert, stating the necessity therefor and the probable cost. In the absence of a previous authorization, only ordinary witness fees may be paid for the employ-

ment of a person as an expert witness.[1]

■ Applications for the employment of an expert must demonstrate the "necessity" for their services. Yet, no allegation concerning the accused's mental condition was made in any of the pretrial requests to the convening authority for employment of a civilian psychiatrist. Individual military counsel relied only on the absence of a physician-patient privilege in military law, the supposed partiality of government psychiatrists, and the fear that the accused's statements to a government psychiatrist would be admissible in evidence against him. None of these is sufficient to demonstrate the need for employment at government expense of a defense expert witness.

■ First, as we have noted, the records before this Court establish the competence and objectivity of Army medical personnel. In this case, the defense produced no evidence to support its claim as to the alleged partiality of members of the psychiatric board. Similar contentions have been rejected in Article III courts as not enough to establish a need for employing a defense expert. Proctor v Harris, 413 F2d 383 (DC Cir 1969); McGarty v O'Brien, 188 F2d 151 (1st Cir 1951); United States ex rel. Dessus v Pennsylvania, 452 F2d 557 (3d Cir 1971). We also hold that a bare suggestion of partiality did not require the convening authority to grant this accused's request.

■ Second, counsel's contention that the accused's statements to military psychiatrists might be used against him is similarly without merit. In his final order for a pretrial mental examination the military judge carefully foreclosed any revelation to the prosecution of statements made by the accused to the board. Under these circumstances, the contention of possible self-incrimination is without substance.

■ Finally, the lack of a physician-patient privilege[2] in military law does not constitute a reason for employment of a civilian expert. The question of privilege is governed by the law of the forum in which the witness testifies. Wigmore, Evidence § 5 (3d ed.). Since no physician-patient privilege exists in trials by courts-martial, a civilian psychiatrist may be compellable to testify concerning disclosures made to him by the accused.

■ Thus, in this case the accused made no showing of the need for employing a civilian psychiatrist to examine him before trial. In a different setting an accused may be entitled to relief of the kind sought here. A history of disturbances, former diagnoses, conflicts in military psychiatric opinions, or other circumstances may justify a defense need for the services of its own expert to examine the accused and to present testimony in his behalf at the trial. We say no more here than that this is not such a case.

■ We have not overlooked civilian counsel's expressed satisfaction with the military psychiatric report or his express desire not to have a continuance for purposes of a further civilian examination. As we read the record, his desire to proceed may have reflected only an awareness of the earlier refusal to provide government funds to employ the civilian expert. An acquiescence of this type should not constitute a waiver. In any event, the seriousness of the charge and the importance of the issue resulted in our considering the merits of the question.

The decision of the Court of Military Review is affirmed.

Judge Quinn concurs.

Duncan, Judge (concurring in the result):

In affirming the judgment of the Court of Military Review, I differ somewhat from the majority as to the reasons calling for that conclusion. My primary con-

---

[1] The paragraph is applicable in the Army and is further implemented by the provisions of Army Regulation 37-106, paragraph 13-38.

[2] Although the ethics of the medical profession forbid medical officers and civilian physicians to disclose without authority information acquired while acting in a professional capacity, no privilege attaches to this information or to statements made to them by patients.

Paragraph 151*d*(2), MCM.

cern and reservation about the majority opinion is not that it incorrectly states the existing law, but with the antagonistic choices, under existing law, that one accused of crime faces in the event that he seeks to raise the issue of mental capacity prior to or at trial. The case before us, alleged premeditated murder, stages the problem.

At a point during the Article 39(a) session, individual military defense counsel stated that:

Captain Lewis and I have spent a great deal of time with the accused and we've discussed this case in great detail with him. Not only has the accused displayed a recalcitrant attitude, we feel that he has displayed to us certain qualities that show that we are not completely convinced that he understands the nature of the proceedings, the gravity of the offense, nor whether he wishes to participate in defending himself.

Thereafter, pursuant to paragraph 122, Manual for Courts-Martial, United States, 1969 (Rev.), the military judge, realizing the serious charges to be litigated, properly ordered an examination before a psychiatric board and entered the protective order mentioned in the majority opinion.

An accused in such a position faces a major choice between unsatisfactory alternatives. If he submits to the examination by the board, does he risk having statements made to the board being used at trial to determine his guilt? Citing United States v Babbidge, 18 USCMA 327, 331, 40 CMR 39, 43 (1969), the majority opinion states that the objective of the board members is to determine mental capacity rather than other evidence of guilt. To be sure that statement

is undoubtedly accurate, but it is far short of holding that incriminatory statements voiced during the examination are inadmissible in evidence. I also have great faith in the dedication of psychiatrists to the ethics and responsibilities of their profession. My apprehension is not because of them, but because of the posture of the law.

In the instant case there were requests by the defense that if the appellant were examined that he not be informed of his Article 31 rights prior to the examination. However, the military judge correctly commented on the fact that the examiner is required to give the warnings. See Army Technical Manual 8-240, Psychiatry in Military Law, paragraph 4-4f (1968).[3] See also United States v Baker, 11 USCMA 313, 29 CMR 129 (1960); United States v Bunting, 6 USCMA 170, 19 CMR 296 (1955). If the warnings are properly given, there appears to be no impediment to the potential use of the examinee's statements at trial.

I share the view of the majority in United States v Babbidge, supra, that in cases where the defense plans to introduce evidence regarding mental capacity of the accused, the Government should be permitted to have the accused examined. My only reservation is that the accused in being examined must also be protected from having to forego his right to freedom from self-incrimination.

18 U.S.C. § 4244 (1970) provides:

No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on

---

[3] The same manual serves both the Department of the Air Force (AFM 160-42) and the Department of the Navy (NAVMED P-5105). It provides:

Before starting his examination, the medical officer conducting the psychiatric examination *must* advise the accused of the nature of the offense of which he is accused or suspected and make clear to the accused the scope and purposes of the examination. He

should also inform the accused that he is neither "for him" nor "against him," and that he may consult with counsel prior to the examination. At the same time the medical officer *will* advise the accused that he need not say anything and that the medical officer may be called upon to repeat in court, as the basis for his opinion, any statements made to him by the accused. [Emphasis added.]

the issue of guilt in any criminal proceeding.

Therein, Congress has acted to prevent the impediment to the defense that I find onerous. My research does not uncover any provision of law in the military system of justice that accomplishes the purpose of 18 U.S.C. § 4244.

The military judge, wisely recognizing the problem faced by the defense, entered the protective order referred to by the majority. I join in the commendation of the judge for his awareness and action in an attempt to preserve the full range of the appellant's rights. The only question is whether the order reasonably accomplishes its noble purpose. First, it does not specifically state that statements made during the interview may not be admitted against the accused on the issue of his guilt. Next, the military judge, outside the provisions of the order but on the record, indicated that the inquiry by the board was not to be a means of discovery and that he would sanitize the record. If such a statement can be reasonably interpreted as meaning that he would not allow such evidence to be introduced, the query arises as to whether his decision to reject such evidence is within his discretion. Or suppose he or another judge should change his mind and admit the evidence. The strategy of defense should not have to depend on a gamble as to the answer to such questions.

I would hold that in order to comport with due process of law no statement made during such an examination shall be admitted in evidence against the accused concerning his guilt. If this Court were to so hold in this request, a fair trial to both parties would result.

Turning now to the instant case, although much discussion ensued after the defense request for a civilian psychiatric examination I find no defense objection to the procedure ordered by the military judge. The record is silent as to whether warnings were given prior to the interview or whether any statements were elicited regarding the crimes Johnson faced, or if he made any incriminatory statements. Therefore, I see no evidence of the law working to appellant's constitutional detriment in this case.

Insofar as the majority concludes that there is no evidence of record showing that the military judge erred in refusing to request the convening authority to authorize the employment of an expert to examine the appellant, I agree. There is no evidence that illustrates that the defense case was prejudiced by the absence of a defense psychiatrist. The only indication of record suggestive of insanity as a defense is the statement of counsel set forth above. And, after the medical board found appellant mentally capable, no objection was made and no further request for expert testimony was made. We can only speculate as to whether or not the defense decided to abandon raising the issue of sanity. For these reasons I affirm the decision of the Court of Military Review.