**UNITED STATES**

v.

**David D. PARKER, 438 96 6953, Private (E–1), U.S. Marine Corps.**

**NMCM 80 0637.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 13 Sept. 1979.

Decided 29 May 1981.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Defense Counsel.

LT L. M. Maynard, JAGC, USN, Appellate Defense Counsel.

LT Wm. Eric Minamyer, JAGC, USNR, Appellate Government Counsel.

Before GREGORY, Senior Judge, and DONOVAN and GLADIS, JJ.

GREGORY, Senior Judge:

Appellant was tried by a general court-martial constituted with officer members. Contrary to his pleas of not guilty, he was convicted of premeditated murder of his barracks roommate and assault on another Marine by pointing a .45 caliber pistol at him, in violation of Articles 118 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 918 and 928. He was sentenced to life imprisonment, forfeiture of all pay and allowances, and a dishonorable discharge. The findings and sentence were approved by the convening authority, Commandant Fifth Naval District.

The essential facts are not in dispute. The only issue was the state of appellant's mind at the time of these incidents and the degree of his legal responsibility for what occurred. On the morning of 15 March 1979, appellant and his two roommates, Private First Class Drury and Private First Class Maldonado, were preparing their room for an Inspector General's inspection later that day. A disagreement developed when appellant left to assume a watch at 0635, although PFC Drury had "ordered" him to remain and clean his portion of the room. At approximately 0820, PFC Drury was able to convince the Corporal of the Guard to order appellant to return to his room and help clean it. Appellant returned reluctantly and assisted in the clean-up for a short time until the Sergeant of the Guard sent word for him to return to his watch. PFC Drury again attempted to intervene, and as appellant departed he again used an obscene epithet in telling appellant to return. Upon reassuming his status, appellant was reissued his .45 caliber pistol and ammunition; thus equipped, appellant returned to his room instead of his gate watch and proceeded to shoot and kill PFC Drury. Appellant then walked out of the room and down a flight of stairs where a LCPL Hayes was sweeping in preparation for the inspection. LCPL Hayes had heard "gunshots" and noticed appellant with the .45 caliber pistol in his hand. He asked appellant what he was doing. Appellant did not reply, but instead pointed the pistol and LCPL Hayes at chest level. LCPL Hayes raised his hands and backed away. Appellant then left the barracks and was walking away. A Gunnery Sergeant Mills, the Guard Chief for Marine Barracks, Norfolk, had also heard the shots and rushed to the area. He observed appellant and called to him. Appellant walked up to Gunnery Sergeant Mills, who retrieved the pistol from appellant's unbuttoned holster without further incident.

On appeal the following errors have been assigned for our consideration:

I

WHETHER THE MILITARY JUDGE'S RULING PERMITTING THE PROSE-

CUTION TO ELICIT FROM THE GOVERNMENT PSYCHIATRISTS THEIR RELATION OF APPELLANT'S NARRATIVE OF THE SUBSTANTIVE EVENTS GIVING RISE TO THE CHARGES AGAINST HIM, OBTAINED DURING THE COURSE OF THEIR BABBIDGE—COMPELLED 121 BOARD INTERVIEW, DID NOT ERRONEOUS-LY AND PREJUDICIALLY BURDEN APPELLANT'S SIMULTANEOUS RIGHT TO PRESENT AN INSANITY DEFENSE AND CONCURRENTLY RE-FRAIN FROM INCRIMINATING HIM-SELF AT TRIAL?

## II

WHETHER THE MILITARY JUDGE ERRONEOUSLY REFUSED TO IN-STRUCT THE MEMBERS THAT A FINDING OF NOT GUILTY AS A CON-SEQUENCE OF A LACK OF MENTAL RESPONSIBILITY WOULD NOT NEC-ESSARILY RESULT IN APPELLANT'S RELEASE, IN LIGHT OF CERTAIN TESTIMONY SUGGESTING CONFINE-MENT OF SOME SORT CONSTITUTED PROPER "TREATMENT" FOR APPEL-LANT'S MENTAL DISABILITIES?

## III

WHETHER THE MILITARY JUDGE ERRONEOUSLY REFUSED TO IN-STRUCT ON INVOLUNTARY MAN-SLAUGHTER AS REQUESTED, NOT-WITHSTANDING THE FACT THAT THE ISSUE OF PARTIAL MENTAL RESPONSIBILITY HAD BEEN RAISED?

## IV

WHETHER THE MILITARY JUDGE ERRED IN REFUSING TO GIVE THE "HESITATION" INSTRUCTION ON REASONABLE DOUBT?

## V

WHETHER THE MILITARY JUDGE PROPERLY SUPPRESSED PROBA-TIVE AND VALUABLE EXPERT TES-TIMONY ON THE ISSUE OF APPEL-LANT'S SUBSTANTIAL CAPACITY TO CONTROL HIS ACTIONS?

## VI

WHETHER THE EVIDENCE IS SUF-FICIENT AS A MATTER OF LAW TO SUPPORT A FINDING OF GUILTY BEYOND REASONABLE DOUBT ON CHARGE II.

We do not concur in the assignments of error, and we affirm.

## I

As previously noted, the only issue in this case was the state of appellant's mind and the degree of his legal responsibility for his actions. A forensic psychologist and a fo-rensic psychiatrist were hired by the de-fense and testified at trial. One member of the board convened pursuant to paragraph 121, *Manual for Courts-Martial, 1969 (Rev.)* (MCM), was also called by the defense. The other two members of the 121 Board were called by the prosecution. During the testi-mony of these mental health experts, cer-tain out-of-court statements of appellant were discussed which revealed, among other things, that appellant, when he returned to the room armed, intended to humble or humiliate PFC Drury or to kill him; that, before firing, appellant told PFC Drury three times he was going to die; that appel-lant's actions were deliberate; and that ap-pellant showed no remorse. These state-ments were used by the various mental health experts in making their determina-tions whether appellant could appreciate the criminality of his actions and could con-form his actions to the requirements of the law.

Appellant contends that the military judge, by allowing the prosecution witness-es to relate the statements made to them during the 121 inquiry, "erroneously and prejudicially [burdened his] simultaneous rights to present an insanity defense and concurrently refrain from incriminating himself at trial." In this regard, he argues that this Court erred in *United States v.*

*Duwors,* 6 M.J. 957 (N.C.M.R.1979), *pet. denied,* 7 M.J. 262 (C.M.A.1979), a case involving a similar procedure. He further indicates that Rule 302 of the Military Rules of Evidence (MRE), now in effect but not at the time of this trial, would have excluded these out-of-court statements of appellant.

■ We do not believe the changes made by Rule 302 are pertinent to the case of this appellant. The Military Rules of Evidence did not become effective until almost one year after the trial of this case. At the time of this trial, military law supported the military judge's decision to admit the out-of-court statements made to the prosecution witnesses.[1]

In *United States v. Duwors, supra,* we held that an accused's statements made during a sanity board inquiry may be admitted on the merits at trial if the accused was properly warned in accordance with Article 31, UCMJ, 10 U.S.C. § 831. This holding was consistent with those of the Court of Military Appeals in *United States v. Babbidge,* 18 U.S.C.M.A. 327, 40 C.M.R. 39 (1969); *United States v. White,* 19 U.S.C.M.A. 338, 41 C.M.R. 338 (1970); and *United States v. Frederick,* 3 M.J. 230 (C.M.A. 1977); and with the Army Court of Military Review in *United States v. Triplett,* 44 C.M.R. 466 (A.C.M.R.1971), *aff'd* 21 U.S.C.M.A. 497, 45 C.M.R. 271 (1972).

In the present case, appellant was properly warned in accordance with Article 31, UCMJ. Appellant had cooperated with the sanity board under the terms of an agreement whereby any statements made by him during the board's inquiry would not be introduced unless the defense raised the issue of mental responsibility at trial[2] and would only be used then with respect to the limited issue of mental responsibility. *See* Appellate Exhibit 85, attachment 1. On this basis, in accordance with paragraph 57a(2), MCM, the military judge on two occasions instructed the court members that

their consideration of appellant's out-of-court statements was limited to the issue of mental responsibility. (R. 477, 537).

At trial, appellant submitted a motion *in limine* to preclude recitation of appellant's out-of-court statements to the Government experts. (R. 249; Appellate Exhibit 84). The military judge, relying primarily on *Duwors,* denied this motion. The present case is even stronger than *Duwors* in which the statements made to the Government psychiatrists were used not only on the issue of sanity but also on the ultimate issue of guilt or innocence.

■ In summary, the issue of mental responsibility was the only issue in this case; there was never any contest whether appellant had shot and killed PFC Drury. Appellant was properly warned prior to being questioned and evaluated by the sanity board, and the military judge instructed the court members on the perspective which must be applied to appellant's statements made during the sanity board inquiry. Under these circumstances, there was no impermissible conflict between appellant's rights to present a sanity defense and not to incriminate himself. The military judge correctly ruled in accordance with military law then prevailing that the statements in question were admissible.

## II

■ The military judge refused to instruct the court members that a finding of not guilty would not necessarily result in appellant's release. The defense had proposed an instruction which would allude to the power of the Secretary of the Navy to commit insane persons for appropriate hospitalization. *See* 10 U.S.C. § 6202. We concur in the military judge's reasoning in refusing to so instruct. Such considerations are irrelevant to the function of the court in determining guilt or innocence and could prove misleading to the members. In addition, such considerations could lead to re-

---

1. MRE 302(b)(2) allows prosecution experts to "testify as to the reasons for [their] conclusions and the reasons therefor as to the mental state."

2. "*See* MRE 302(b)(1) and accompanying analysis, Appendix 18, MCM."

quests for instructions on all collateral aspects of a finding of guilt or innocence. *See United States v. Givens*, 11 M.J. 694 (N.M.C.M.R.1981).

## III

Appellant contends that the military judge erred in refusing to instruct on involuntary manslaughter as a possible lesser included offense. He notes that the judge did instruct on the issue of "partial mental responsibility" as it related to the ability to form the specific intent to kill or to inflict grievous bodily harm necessary for a conviction of premeditated or unpremeditated murder. Appellant cites our attention to *United States v. Vaughn*, 23 U.S.M.C.A. 343, 49 C.M.R. 747 (1975), in which the Court of Military Appeals held that the defense of "partial mental responsibility," if established, will permit an accused's conviction of no greater degree of homicide than that of involuntary manslaughter. Since the judge instructed on "partial mental responsibility," appellant argues he was also obligated to instruct on involuntary manslaughter.

■ We do not concur in appellant's contention that an instruction on "partial mental responsibility" necessitates an instruction on involuntary manslaughter. The evidence must still place the offense of involuntary manslaughter in issue before it becomes a lesser included offense requiring instruction. A necessary element of involuntary manslaughter is an act or omission constituting culpable negligence or done while perpetrating or attempting to perpetrate certain offenses. Paragraph 198*b*, MCM. The record of trial in this case is totally devoid of any evidence of this nature.

In addition, our examination of the record of trial leads us to conclude that the military judge's instruction on "partial mental responsibility" was not really necessary. There was unanimity among the prosecution and defense experts that appellant was able to entertain the specific intent to kill.

Appellant has received a bonus in this case by the instruction on "partial mental responsibility." On the basis of such an instruction, it was possible that the court members could have completely exonerated appellant. Despite appellant's argument to the contrary, it was not necessary to allow the members another option, that is, involuntary manslaughter. An instruction on a lesser included offense not raised by the evidence would be inappropriate and could result in confusion for the members. *Cf. United States v. Waldron*, 11 M.J. 36 (C.M.A.1981).

Appellant was not entitled to an instruction on involuntary manslaughter in this instance and has not been prejudiced by the absence of such an instruction.

## IV

The military judge instructed the members concerning reasonable doubt in accordance with the standard instruction found in paragraph 2–4 of the Military Judge's Guide, Department of the Army Pamphlet 27–9. (R. 542). The reference to "substantial doubt," included in this standard instruction, has been found to be improper and future reference to such a term is to be avoided. *United States v. Salley*, 9 M.J. 189 (C.M.A.1980). The military judge in this case did not use the term "substantial doubt"; however, he did refer to "substantial misgiving" which we find synonymous in the context used.

This case predates the decision in *Salley* by almost one year; however, we note that a proper objection to the instruction given was entered by the defense at trial and a correct instruction on reasonable doubt was rejected by the military judge. (R. 493; Appellate Exhibit 108). Under similar circumstances in *United States v. Cotten*, 10 M.J. 260 (C.M.A.1981), the Court of Military Appeals found prejudicial error.

■ The instruction given by the military judge in the present case was erroneous. The evidence as to guilt both on the merits and on the question of sanity, however, is overwhelming. For this reason, we are convinced beyond a reasonable doubt

**762**

that the appellant was not harmed by the instructional error. *See United States v. Woodrum*, 10 M.J. 329 (C.M.A.1981) (summary disposition); *United States v. Moss*, 10 M.J. 329 (C.M.A.1981) (summary disposition).

V

■ The military judge correctly refused to allow trial defense counsel to ask two of the Navy psychiatrists whether appellant would have been deterred by "a policeman at his elbow." Such a standard for determining mental responsibility is no longer recognized in military law. *United States v. Frederick, supra.*

VI

■ Appellant summarily asserts that the evidence is insufficient as a matter of law to support the findings of guilty as to the subsequent assault on LCPL Hayes. We do not agree. The testimony of LCPL Hayes is essentially unrebutted. The circumstances constituted a classic example of an offer-type assault.

VII

Although not advanced as a specific assignment of error, we have given careful consideration to the appropriateness of the sentence in this case which includes life imprisonment. We recognize that appellant has psychiatric problems, although not of such severity as to constitute a defense to the offenses of which he stands convicted. Despite these problems, the evidence clearly indicates a cold and calculated murder and conduct shocking in its gravity. We find the facts of this case to justify fully the sentence adjudged.

Accordingly, the findings of guilty and the sentence as approved on review below are affirmed.

Judge DONOVAN and Judge GLADIS concur.