UNITED STATES, Appellant and Cross-Appellee

v

DAVID R. SCHELL, Airman First Class, U. S. Air Force, Appellee and Cross-Appellant

18 USCMA 410, 40 CMR 122

*Major Donald B. Strickland* argued the cause for Appellant and Cross-Appellee, United States. With him on the brief was *Colonel James R. Thorn.*

*Lieutenant Colonel Samuel C. Wexler* argued the cause for Appellee and Cross-Appellant. With him on the brief was *Colonel Bertram Jacobson.*

## Opinion of the Court

QUINN, Chief Judge:

One of the principal issues at the accused's trial by general court-martial on charges of larceny, desertion, and unauthorized absence, in violation of Articles 121, 85, 86, Uniform Code of Military Justice, 10 USC §§ 921, 885, 886, respectively, was whether his mental condition prevented him from conforming his conduct to the requirements of law.

A psychiatrist testified for the accused. He indicated he had examined the accused and, in his opinion, the accused suffered from pseudoneurotic schizophrenia as a result of which he was unable to adhere to the right. To rebut this testimony, the Government called Dr. Jerome B. Blumenthal, a military psychiatrist. Dr. Blumenthal had observed and examined the accused before trial. Over defense counsel's objection, he was allowed to testify that, in his opinion, the accused was free from mental disease or defect and was mentally competent to know right from wrong and to adhere to the right.

The court-martial decided the issue of mental competency against the accused. On review, a board of review held that the Government's rebuttal evidence was inadmissible because the accused was not first advised by Dr. Blumenthal "of his right to remain silent or of his right to counsel." See United States v Tempia, 16 USCMA 629, 37 CMR 249. Pursuant to provisions of Article 67(b)(2), Code, supra, 10 USC § 867, the Judge Advocate General of the Air Force certified the following question for this Court's consideration:

"WAS THE BOARD OF REVIEW CORRECT IN HOLDING THAT TESTIMONY OF DOCTOR BLUMENTHAL WAS INADMISSIBLE?"

After the board of review had acted in this case, we decided United States v Babbidge, 18 USCMA 327, 40 CMR 39, and United States v Wilson, 18 USCMA 400, 40 CMR 112. In *Babbidge,* we held that the accused's introduction of the results of a psychiatric evaluation based upon statements he made to a psychiatrist constitutes "a qualified waiver of his right to silence under Article 31" of the Uniform Code and gives the Government the right to request a sanity examination by other doctors; in *Wilson,* we held that the Government could, without first establishing the accused had been advised of his rights under Article 31, properly introduce evidence of the results of a pretrial psychiatric evaluation of the accused to rebut testimony by a defense psychiatrist as to the ac-

**411**

cused's mental competency which is predicated upon an examination of the accused. Tested by these cases, the board of review erred in its conclusion that Dr. Blumenthal's rebuttal testimony was inadmissible. We, therefore, answer the certified question in the negative.

In his own application for review, the accused contended he was prejudiced by the admission in evidence of certain statements in two stipulations of expected testimony. The statements related remarks made by the accused during two pretrial interrogations by different civilian law enforcement agents. The Government concedes the stipulations indicate the advice by the agents to the accused as to his right to counsel during questioning was inadequate in each instance, but it contends the accused affirmatively and intentionally waived the deficiency, so that his remarks could be placed before the court members. A number of circumstances support this contention.

Had the accused not consented to stipulate to the expected testimony, his statements might never ▬▬▬▬■ have come before the court members because the law officer could, and we must assume he probably would, on his own initiative, have ruled them inadmissible. Defense counsel's opening statement further supports the conclusion that the defense affirmatively desired that the statements be admitted. Counsel informed the court members he intended to introduce some of the statements by testimony from another police officer, and this testimony, he maintained, would cast "grave doubt" upon the accused's "mental responsibility." Such other testimony was in fact introduced. In addition, the defense psychiatrist testified that certain of the accused's pretrial remarks illustrated "another feature of . . . [his] schizoid makeup." Thus, the record of trial demonstrates that the accused's pretrial remarks were in evidence not because defense counsel merely neglected to interpose an objection, but because the

defense wanted the remarks considered by the court members. We are satisfied, therefore, that the accused affirmatively "consent[ed] to receipt of the evidence." United States v Gustafson, 17 USCMA 150, 152, 37 CMR 414. Consequently, no error was committed in admitting the accused's pretrial statements as part of the stipulations of expected testimony.

The decision of the board of review is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to the board of review for further proceedings consistent with this opinion.

Judge DARDEN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

I agree outright with my brothers' holding that there was no error in the admission of the accused's pretrial statement as part of the stipulations of expected testimony. United States v Gustafson, 17 USCMA 150, 37 CMR 414. I disagree, however, as to their determination that the board of review was not correct in holding the testimony of Doctor Blumenthal inadmissible (see my dissenting opinion in United States v Babbidge, 18 USCMA 327, 40 CMR 39), but accept the result as the law of this Court. See my opinion concurring in the result in United States v Wilson, 18 USCMA 400, 40 CMR 112.

Although I have previously presented my views on this issue in *Babbidge,* I feel impelled to add some additional comments. When one accused of crime enters a plea of not guilty, the burden is on the Government to prove his guilt beyond a reasonable doubt. Under the provisions of the Fifth Amendment to the Constitution, he may not "be compelled in any criminal case to be a witness against himself." The defense of insanity is, in effect, a plea of not guilty because of a defect of the mind. By virtue of such a plea, however, my brothers hold that an accused may be *compelled* to waive his right to silence and to offer testimony to the prosecution's psychia-

412

trists in support of the Government's burden of proof, or, in the alternative, to forgo the defense.

I believe this is not the law. While one may *voluntarily* waive his right to silence, the Government may not *compel* him to do so. We affirmed this proposition in United States v Kemp, 13 USCMA 89, 32 CMR 89, where we held that it was error to inform the court members that Kemp declined to be interviewed by Government psychiatrists and refused to waive his right to silence. As the late Judge Kilday said in *Kemp,* at page 100:

"We echo Justice Harlan's warning, quoted earlier, that 'the danger . . . of . . . equating the plea of the Fifth Amendment with guilt is, in light of contemporary history, far from negligible.' We know that currently great resentment has grown up in our country against what is regarded as flagrant abuse of the right to refuse to answer under the Fifth Amendment. As shown in *Slochower,* supra, laws have been passed to remove from public employment, *ipso facto,* one invoking its protection. No one need have admiration for the individual who has so conducted himself as to find it necessary to seek this protection. Especially is this true when the question involves loyalty to our own form of government. Naturally, resentment exists in patriotic and sincere people. The danger lies in the fact that this resentment extends to all persons refusing to answer questions on all subjects. It, therefore, behooves those prosecuting capital cases, and reviewers in passing thereon, to make positive that no such consideration entered into the determination that an accused must forfeit his life.

"The action of trial counsel in developing the fact that accused had claimed the protection of Article 31 was highly prejudicial to the accused. It had a direct bearing on the only substantial issue in the case and requires reversal of his conviction for premeditated murder."

I believe it is clear that *Kemp* has been overruled. In my opinion, this decision does a serious disservice to military accused and pointedly ignores the words of Mr. Justice Bradley as found in Boyd v United States, 116 US 616, 635, 29 L Ed 746, 6 S Ct 524 (1886):

". . . It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon."