UNITED STATES, Appellee

v

WILLIE L. HAYES, Jr., Private, U. S. Army, Appellant

19 USCMA 60, 41 CMR 60

No. 22,049

November 14, 1969

*Captain Karl J. Uebel* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent, Lieutenant Colonel Martin S. Drucker, Major Francis A. Gilligan,* and *Major John Wall Hanft.*

*Captain John C. Lenahan* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel David Rarick, Major Edwin P. Wasinger,* and *Captain Herbert D. Miller, Jr.*

## Opinion of the Court

DARDEN, Judge:

The Court granted this petition for review to consider whether the accused was prejudiced because his counsel was not notified when a sanity board examined the accused in compliance with a request by his counsel. A related question is whether, in the absence of such notice, other procedural safeguards such as a transcript or tape recording of the sanity board proceedings were required.

A general court-martial found the accused guilty of robbery and escape from custody, in violation of Articles 122 and 95, Uniform Code of Military Justice, 10 USC §§ 922 and 895, respectively. He was sentenced to a bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for twelve months, and reduction to the grade of Private E-1. Intermediate appellate authorities have affirmed the findings and sentence.

While awaiting transfer to a stockade to serve confinement at hard labor adjudged by an earlier special court-martial, Hayes forced a guard to relinquish his pistol and then escaped from custody. Two days later a criminal investigator apprehended Hayes in the waiting room of the Mental Hygiene Clinic at Fort Stewart, where Hayes had participated in a series of consultations. At the time of his apprehension, Hayes was dressed in women's clothing including a wig, net stockings, lipstick, and a handbag. At the trial there was testimony and speculation that this attire was intended to prevent his identification.

Two days after this apprehension his civilian attorney filed notice of his appearance as the accused's individual defense counsel. On the same date an Army psychiatrist, Captain John F. Whitaker, examined Hayes and concluded that he was mentally

60

responsible and had the capacity to act in his own behalf, diagnosing his condition as merely a character and behavior disorder.

Nearly three months later, on May 14, 1968, after an Article 32 investigation and the referral of this case to trial, Hayes's civilian counsel requested that a sanity board evaluate Hayes. The counsel included no request that he be notified of the time of such evaluation. A sanity board consisting of Captain Whitaker and his superior officer, Major Lucien B. Fleurant, the Chief of the Department of Neuropsychiatry at the Fort Gordon Army Hospital Specialized Treatment Center, convened on May 22. The record contains nothing to indicate that either the civilian or the military counsel of Hayes's was notified that the board was to be convened.

The findings of this board were substantially the same as those made by Captain Whitaker at the time of his first evaluation in February. At the trial Major Fleurant testified to his opinion that Hayes was mentally responsible at the time of the offenses and that he was mentally competent to stand trial. An expert psychologist called by the defense testified that in his opinion Hayes was not responsible for the offenses because of an inability to adhere to the right and that Hayes lacked the mental capacity to assist in his defense.

No issue was made at trial of the lack of notice that the sanity board was meeting or the lack of a transcript or tape recording of the sanity board proceedings. Appellate defense counsel recognize that the decisions of this Court in United States v Babbidge, 18 USCMA 327, 40 CMR 39; United States v Wilson, 18 USCMA 400, 40 CMR 112; and United States v Schell, 18 USCMA 410, 40 CMR 122, and the civilian cases relied upon by this Court in deciding those cases, have narrowed the scope of possible contentions in this area. Since *Babbidge*, *Wilson*, and *Schell*, this Court has also decided in United States v Ross, 19 USCMA 51, 41 CMR 51, that failure to provide notice to counsel of psychological testing of an accused as a part of a sanity board finding was not prejudicial error. On appeal before this Court appellate defense counsel concentrates his argument on the points that lack of notice and the lack of provision for a transcript or a tape recording of the proceedings before the pretrial sanity board denied accused his right to the effective assistance of counsel and that consequently he was denied a fair trial. In pressing these arguments counsel for Hayes relies strongly on United States v Wade, 388 US 218, 18 L Ed 2d 1149, 87 S Ct 1926 (1967), and Thornton v Corcoran, 407 F 2d 695 (CA DC Cir) (1969).

*Wade* held that a lineup is a critical stage of the prosecutorial process and that the right to counsel attaches at that time.

We have not had cited to us, and we have been unable to find, any Federal case holding that a pretrial psychiatric examination is a critical stage of the proceedings. In re Spencer, 46 West's California Reporter 753, 406 P 2d 33 (1965), has been cited as a State authority to this effect. But in any event, accused's contention here is more narrowly based, in that he complains not of being denied the presence of counsel at the sanity board but of lack of notice that the board was meeting and the absence of any record of the proceedings that would enable him on cross-examination to probe the basis for the sanity board's evaluation. His supporting argument is that an accused should have the opportunity to consult with and to receive the assistance of his counsel before the psychiatric examination so that he may later respond fully and intelligently to questions and that notice is a necessary prerequisite.

Thornton v Corcoran, supra, involved a petition for a Writ of Mandamus to compel a district judge to order that petitioner's counsel be permitted to attend a staff conference

at a hospital where the petitioner had been committed for a mental examination. The court had entered an interim order directing that the staff conference be held without awaiting disposition of the petition, that the conference be recorded on audio tape, and that the recording be sealed and kept in the custody of the hospital until further ordered. Concluding that mandamus did not offer an appropriate remedy, the opinion nonetheless commented on the possible application of the Fifth and Sixth Amendments to psychiatric examinations. The manner of the disposition made it unnecessary for the court to reach those questions and consequently these comments do not constitute decisions.

But very much in point here is Wax v Pate, 409 F 2d 498 (CA 7th Cir) (1969). Wax had been examined by a psychiatrist without notice to his retained counsel and in the absence of the counsel. He contended that the time of the examination constituted a " 'critical' stage" of the proceedings and that the denial of counsel at that point constituted a violation of his right to counsel. The Seventh Circuit Court of Appeals upheld a decision by the United States District Court for the Northern District of Illinois, 298 F Supp 164, 170, that "[s]ince none of the constitutional deficiencies said to be inherent where a defendant lacks counsel at a lineup appear to be inherent where he lacks counsel at a pre-trial psychiatric examination, we conclude that the 'critical stage' rationale of United States v Wade has no application to such an examination."

The opinion of the District Court commented pertinently that:

"In the instant situation, the dangers of suggestion relied upon in *Wade* are totally absent. Although techniques to ascertain the defendant's mental status may vary depending upon the examining psychiatrist, in no examination conducted under recognized medical standards should there be a danger that 'the trial which might determine the accused's fate may well not be that in the courtroom, but that at the pre-trial confrontation * * * In sum, the dangers of overreaching which are inherently present in identification situations, are inherently lacking at pre-trial psychiatric observations or examinations. Although the better practice, as recognized by the Rules of the Illinois Supreme Court and Rule 35 of the Federal Rules of Civil Procedure, is to require a court order before subjecting a party to a physical or mental examination, no constitutional concerns of right to counsel are as pressing in this regard as they are to lineups or other identification situations.

"In addition, unlike the identification cases, counsel's right to conduct effective cross-examination should not be hindered by his absence at the pre-trial examination. Whatever risk there might be by the absence of counsel from the examination is minimal at most, and in our judgment, does not derogate from the accused's right to a fair trial. Indeed, petitioner does not raise the argument that his counsel will be able to conduct a less effective cross-examination if absent from the preliminary psychiatric examination.

"If an insanity plea is to be raised at trial, defense counsel will routinely conduct his own pre-trial psychiatric examination, and present his own expert witnesses at trial. The jury will then be compelled to evaluate the relative credibility of the experts, based in part upon their testimony on cross-examination.

"Hence, the other major argument relied upon in *Wade*—that counsel can conduct more effective cross-examination if present at a lineup—is also lacking in the instant situation." [Wax v Pate, 298 F Supp 164, 169 (ND Ill) (1967).]

The court did recognize, however, that there may be situations in which

a pretrial psychiatric examination is conducted in the absence of counsel in a manner that could prejudice the right to a fair trial and that if actual prejudice is shown a new trial should be granted.

What, then, are the arguments that Hayes was prejudiced because his counsel was not notified of the sanity board's meeting and because he was not furnished a transcript or other recording of the board's proceedings? Appellate defense counsel contend that the purpose of the notice or other procedural safeguards was to insure (1) that "his client's mind is focused on his state of mind at the time of the offense," (2) that "the accused's responses are not made in answer to questions outside the proper scope of the sanity board proceedings," and (3) that counsel can more effectively cross-examine Government witnesses concerning the conditions under which the board was held and the conclusions that were reached.

In this case we are unpersuaded that any of these considerations prejudiced the accused. There is no complaint that the mind of the accused was not focused on his state of mind at the time of the offense. Similarly there is no suggestion that the sanity board asked questions outside the proper scope of those proceedings. Instead the length of the interview by the sanity board, one and one-half hours, is attacked as being inadequate for a thorough evaluation. This complaint addresses itself to the weight of the testimony, however, and not to prejudice for lack of notice.

The one argument remaining for consideration is whether in his cross-examination the counsel for the accused was handicapped by lack of notice or by the absence of any other procedural safeguard. After examining the record of trial we are convinced that there was extensive and effective cross-examination of the Army psychiatrist about the basis for the opinions of the sanity board. The defense counsel had been furnished a report of the findings of the sanity board before the date of the trial. At the trial he cross-examined the Army psychiatrist on the board's findings, its consideration of the averred history of insanity in the accused's family and the genetic influence of such a history on the accused, accused's repeated attempts to commit suicide, the normality of the accused's behavior, and his appreciation of the consequences of his acts.

The appellate defense counsel also contend that lack of notice of the sanity board precluded informing the board members of the history of insanity in the accused's family. The Army psychiatrist testified on cross-examination that he had questioned the accused about his family history and that the accused made no mention of a history of insanity. He noted, however, that he was aware of a history of suicidal tendencies in the family of the accused but that he could not state that genetic make-up would affect his conclusions.

Another basis for the assertion of prejudice is that the trial counsel stated he was unable to produce Captain Whitaker as a witness since Captain Whitaker had been ordered not to appear and not to discuss the subject of Hayes's sanity with anyone. But the record shows that it was the trial counsel who vigorously complained about Captain Whitaker's not being available to testify because of what had been explained to the trial counsel as a "hospital emergency" at Fort Gordon. In fact, the trial counsel requested, but was denied, a continuance to permit Captain Whitaker to testify. A contention that the accused was prejudiced because a witness desired by the Government was unavailable is a novel one. If Captain Whitaker were needed by the defense he could have been subpoenaed. Manuals for Courts-Martial, United States, 1951, and 1969 (Revised Edition), paragraph 115b.

The record of trial shows plainly that the testimony of the Army psychiatrist and that of the expert

psychologist were diametrically opposed on some points. Such a conflict is not unusual in trials having sanity issues. Members of the court have the responsibility to choose between conflicting testimony, but the existence of such conflict fails to show prejudice.

In situations such as this we believe that notice of the time of a psychiatric examination should be furnished to the accused and to his counsel. But the absence of such notice is not prejudicial in itself without a specific showing of prejudice.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

My brothers hold that there was error but no prejudice when defense counsel was not given notice of the time when accused was to be psychiatrically examined. While I disagree, the holding of the majority has now become the law of this Court. United States v Babbidge, 18 USCMA 327, 40 CMR 39; United States v Wilson, 18 USCMA 400, 40 CMR 112; United States v Schell, 18 USCMA 410, 40 CMR 122; United States v Ross, 19 USCMA 51, 41 CMR 51. I wrote separately in each of the cited cases and need not restate my views. In such a situation, I have no alternative but to concur in the result in this case.