UNITED STATES, Appellee,

v.

Sergeant Earl J. HOLLEY, U.S. Marine
Corps, Appellant.

No. 44,504.
NMCM 79 1066.

U.S. Court of Military Appeals.

April 9, 1984.

For Appellant: *Lieutenant Burke M. Wong,* JAGC, USNR (argued); *Lieutenant Commander Georgia L. Winstead,* JAGC, USNR (on brief); *Major James P. Axelrod,* USMC, *Lieutenant Commander William A. DeCicco,* JAGC, USN, *Lieutenant Stephen R. Cochell,* JAGC, USNR.

For Appellee: *Major J.S. Uberman,* USMC (argued); *Commander W.J. Hughes,* JAGC, USN, *Lieutenant David W. Paxton,* JAGC, USNR (on brief); *Lieutenant William V. Cerbone, Jr.,* JAGC, USNR.

Amicus Curiae on behalf of Appellee: *Captain Kurt J. Fischer* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Glenn D. Gillett,* and *Captain David A. Brown* (on brief)—For Government Appellate Division, U.S. Army.

Opinion of the Court

FLETCHER, Judge:

Appellant was tried by general court-martial composed of a military judge and officer members at Camp Pendleton, California. His trial was held at various times during 1978 and 1979. Contrary to his pleas, appellant was found guilty of two specifications of premeditated murder and four specifications of attempted premeditated murder, in violation of Articles 118 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 880, respectively. He was sentenced to a bad-conduct discharge, confinement at hard labor for life, total forfeitures, and reduction to pay grade E–1. The convening authority approved the findings and sentence, and the United States Navy-Marine Corps Court of Military Review affirmed.

This Court granted review on the following two questions of law:

I

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION AND COMMITTED PREJUDICIAL ERROR WHEN HE DENIED THE DEFENSE MOTION FOR AN ADDITIONAL PEREMPTORY CHALLENGE UNDER THE COMPLEX CIRCUMSTANCES OF THIS CASE.

II

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY THE ADMISSION OF TESTIMONY FROM THREE PROSECUTION EXPERT WITNESSES WHICH WAS HEARSAY AND VIOLATIVE OF ARTICLE 31(b), UCMJ, 18 U.S.C. § 4244

AND THE FIFTH AND SIXTH AMENDMENTS, U.S. CONST. AND FURTHER ERRED BY FAILING TO INSTRUCT THE MEMBERS REGARDING THE LIMITED RELEVANCE OF SAID TESTIMONY.

We have considered the above issues and conclude they are without merit.

The record of trial reveals the following facts which are pertinent to our resolution of the first granted issue. On March 15, 1978, the Commanding General, Marine Corps Base, Camp Pendleton, California, convened a general court-martial with ten officer members to try appellant. On March 21, 1978, appellant was arraigned and pleaded not guilty to the charges against him which had been referred to this court-martial. The military judge then granted a defense request for a continuance of the trial to April 17, 1978. On April 14 and again on April 17, 1978, the convening authority amended his original convening order resulting in the excusal of four members and the substitution of the same number of new members to replace them.

On April 17, 1978, the court-martial was again called to order and the amending orders were brought to the attention of the military judge. Appellant again pleaded not guilty to all the Charges and specifications. Trial counsel swore the ten members of this court-martial and the military judge announced that the court was assembled.

The members of this court-martial were then subjected to *voir dire*. At its conclusion, two members were challenged for cause by the defense. The military judge granted one challenge for cause and removed that member from the court. The second challenge for cause (against Colonel Blair, the president of the court) was denied. At that point, the prosecution and the defense each exercised a peremptory challenge, removing two other members from the court. The remaining seven detailed members of the court sat and heard opening arguments and testimony from six prosecution witnesses. Numerous prosecution exhibits were introduced at that time.

On April 19, 1978, defense counsel informed the military judge that, based on events occurring on the prior night and conversations with his client that morning, he believed that his client was mentally incapable of cooperating in his defense. After an extended hearing on this question including lay and expert testimony, the military judge found that a reasonable doubt existed as to whether appellant was then competent to stand trial. He asked both the Government and the defense to consider making a motion for a mistrial which they declined to make. The judge indicated that he would not direct a mistrial, and returned the record to the convening authority in accordance with paragraph 122*b*(3), Manual for Courts-Martial, United States, 1969 (Revised edition). On May 1, 1978, the trial judge reconvened the court, ordered the notes of the members sealed and instructed them concerning the continuance and their duties during it.

On May 16, 1978, the convening authority suspended "further action in th[is] case . . . until such time as it . . . [was] determined . . . that the accused ha[d] the . . . mental capacity" to stand trial. The convening authority ordered appellant confined at the United States Bureau of Prisons Facility at Springfield, Missouri, where he remained until November 2, 1978. On November 13, 1978, he returned the record of trial to the same court to determine the question of appellant's mental capacity to stand trial "and if appropriate, to proceed with the trial." On this same date, the convening authority replaced the original trial judge assigned to the court because the latter had retired since the last session of the court.

On November 17, 1978, the new trial judge held a hearing on the present competence of appellant to stand trial. Article 39(a), UCMJ, 10 U.S.C. § 839(a). He ruled that appellant was competent to stand trial. Appellant again was advised of his rights, arraigned, and pleaded not guilty to the charged offenses. At that point, the trial judge afforded each counsel the opportunity to request a mistrial, an option both counsel again declined to exercise.

On December 5, 1978, the seven members of the previous court returned to the courtroom and were subjected to *voir dire.* At the conclusion of the *voir dire,* trial counsel announced that due to "wide scale pollution" of the members, he would not oppose a defense motion for mistrial. The defense again declined to make such a motion. Challenges for cause were granted against three members of this court, including Colonel Blair, who had earlier been unsuccessfully challenged for cause by the defense. The defense also provided some indication that it intended to challenge a fourth member of the court, Lieutenant Rubin, but failed to do so when presented the opportunity by the trial judge.

The trial judge at that point noted that only four members of the original court remained and that they did not constitute a quorum. *See* Article 16(1)(A), UCMJ, 10 U.S.C. § 816(1)(A). He directed trial counsel to notify the convening authority of this fact and that additional members needed to be appointed to the court. Article 29(b), UCMJ, 10 U.S.C. § 829(b). On December 6, 1978, the convening authority detailed five additional members to this court. Court was reconvened on this date and the new members were subjected to *voir dire.* The defense challenged one of the new members for cause and that member was removed from the court.

At this point in the proceedings, defense counsel asked the military judge whether he would be permitted an additional peremptory challenge. The trial judge noted that he was not convinced that appellant was incompetent at the time the defense earlier exercised its right to a peremptory challenge. He concluded, therefore, that no basis existed for giving the defense another peremptory challenge. Defense counsel then stated:

> Your Honor, I would like to state that is my—(a), I would request an additional peremptory challenge. I would say that I'm not yet—have made a decision whether to exercise it or not, but I think that it certainly lies within the discretion of the trial judge to grant additional peremptory challenges. I know that the Manual for Courts-Martial doesn't cover that situation, but it doesn't cover the situation of this trial, and the seven month hiatus that we've gone through and the necessity for appointing as many members as survived the hiatus—so, I would request that the Court exercise the inherent discretion that it has, especially as enunciated in the Federal Rules of Criminal Procedure, and grant us at least one additional peremptory—grant us an additional peremptory. Then, I would like to request about a ten minute recess so that if you do grant it, I may discuss that with my cocounsel and determine whether we want to exercise it or not. We would respectfully request that.

Trial counsel, citing paragraph 62e, Manual, *supra,* argued that the defense was entitled to one peremptory challenge and had exercised it. The trial judge denied the request but stated that he would consider the matter over the weekend and counsel could renew his motion before the members assembled on Monday morning. On December 11, 1978, defense counsel filed a brief with the judge asserting that he was entitled to an additional peremptory challenge, and argument was entertained on this question. The military judge again denied the motion because there was no indication whatsoever that appellant was incompetent at the time he earlier exercised his peremptory challenge.

I

The first issue granted for review concerns the trial judge's decision not to grant appellant a second peremptory challenge at this court-martial. Examination of the record of trial, the memorandum submitted at trial by defense counsel, and appellate briefs indicates a two-pronged attack on the trial judge's decision. One contention is that appellant was entitled to this peremptory challenge on the basis of Article 41(b), UCMJ, 10 U.S.C. § 841(b). His second argument is that the trial judge abused his discretion to grant appellant a second peremptory challenge. Although each of these arguments is distinct in a legal sense, they

share a common factual predicate, i.e., the unusual procedural occurrences in the present case. Therefore, to properly resolve the first granted issue, we deem it necessary to address each of the above contentions. Article 67, UCMJ, 10 U.S.C. § 867.

■ Appellant's initial contention is that Article 41(b) should be construed to require that a second peremptory challenge be afforded him in light of the special circumstances of his case. He concedes that at a prior session of this court-martial, he exercised one peremptory challenge. However, he notes that his request for a second peremptory challenge was made approximately seven months later after a lengthy continuance in his trial, after the composition of his court-martial had been substantially changed, and after his trial had begun anew. He asserts that "for all practical purposes," a new court-martial had been formed, and he was once again "entitled" under Article 41(b) to exercise his right to peremptory challenge. *See generally* para. 81*b*(1), Manual, *supra*.[1]

A similar argument can be drawn by implication from certain statements made in the brief of appellate defense counsel. There it is noted that after the lengthy continuance in this case, three members of the originally sitting seven-member court were successfully challenged and the court's membership was reduced below a quorum. Article 16(1)(A). Moreover, five new members were subsequently appointed to sit on this court (Article 29(b)), and this is a number sufficient in itself to constitute a quorum. In this situation, it may be argued

that the convening authority had detailed a new panel [2] for this court-martial, and such action revives appellant's right to peremptory challenge. *See* B. Feld, *A Manual of Courts-Martial Practice and Appeal* 66 (1957).

Both these claims, in terms of equity and common sense, possess some merit, but as a matter of law they are without support. Article 67. Article 41(b) simply states, "Each accused and the trial counsel is entitled to one peremptory challenge." No additional entitlement under any circumstances is expressly provided for within the terms of this statute or under any other provision in the Code. *See* Article 29(b). To overcome this obstacle, appellant invites this Court to find ambiguity in the unequivocal language of this statute. Such an invitation we must reject.

Nothing in the legislative history of Article 41(b) suggests that the drafters of the Code intended an accused ever to be entitled to more than one peremptory challenge in a court-martial. In fact, the legislative history of Article 29(b), which is accurately reflected in paragraph 62*e*, Manual, *supra,* states that this peremptory challenge can be used against new members if it has not already been exercised. *See* Hearings on H.R. 2498 Before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess. 1158–1160 (1949); H.R.Rep. No. 491, 81st Cong., 1st Sess. 19 (1949); and S.Rep. No. 486, 81st Cong., 1st Sess. 15 (1949), reprinted in *Index and Legislative History of the Uniform Code of Military Justice.*[3] In view of the historical disfavor

---

1. The Charges were never withdrawn from the original court-martial by the convening authority and a mistrial was never declared by the military judge. *See* para. 56, Manual for Courts-Martial, United States, 1969 (Revised edition). Moreover, the convening authority did not refer these charges to another court-martial for further prosecution (*id.*) or order a rehearing. Paras. 124 and 92*a*, Manual, *supra.* Instead, he returned the charges to the original court seven months later to proceed, if appropriate, with the trial. *See* para. 122*b*(3), Manual, *supra.* This was not a new trial or a new court-martial as a matter of military law. *See generally McClaughry v. Deming,* 186 U.S. 49,

63–66, 22 S.Ct. 786, 791–793, 46 L.Ed. 1049 (1902); *Runkle v. United States,* 122 U.S. 543, 556–57, 7 S.Ct. 1141, 1146–1147, 30 L.Ed. 1167 (1887).

2. Black's Law Dictionary describes a "[j]ury panel" as a "group of prospective jurors who are summoned to appear on a stated day and from which a grand jury or petit jury is chosen." Page 769 (5th ed. 1979).

3. In light of this legislative history, we reject any suggestion that paragraph 62*e,* Manual, *supra,* is a rule of procedure which impairs or embarrasses the accused in the free and intelli-

with which peremptory challenges have been viewed at courts-martial,[4] adoption of either of the suggested statutory constructions of Article 41(b) would amount to judicial usurpation of legislative power. *Stilson v. United States,* 250 U.S. 583, 586, 40 S.Ct. 28, 29, 63 L.Ed. 1154 (1919).[5]

■ Appellant's second contention is that the trial judge abused his discretion to grant the defense an additional peremptory challenge in view of the special circumstances of this case. *See United States v. Hueftle,* 687 F.2d 1305, 1308–09 (10th Cir. 1982); *United States v. Haldeman,* 559 F.2d 31, 79 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977). Such an argument necessarily implies that the trial judge in appellant's case had the authority to grant such a request; that he arbitrarily and capriciously denied appellant's request; and that this ruling constituted reversible error. *Id.* We find no such error in the present case.

The particular issue we will address is whether the trial judge had discretionary power to grant appellant's request for an additional peremptory challenge. *E.g.,* Fed. R.Crim.P. 24(b). Appellant asserts that the authority for permissible peremptory challenges at courts-martial can be derived from three different statutory sources. First, he argues that Article 41(b) can be broadly construed to include such a power. *See United States v. Harris,* 13 M.J. 288, 294 n. 3 (Everett, C.J., dissenting). Second, he contends that such power is conferred on the trial judge by 18 U.S.C. § 4244 to remedy any prejudice suffered by him as a result

of the trial judge's finding that he was mentally competent to stand trial. Finally, he claims that such a power can be derived from the inherent authority of a trial judge to insure an accused receives a fair trial. *United States v. Chaplin,* 8 M.J. 621, 625 (N.C.M.R.1979).

Appellant's initial assertion of authority is essentially a restatement of the comments in Chief Judge Everett's dissent in *United States v. Harris, supra.* In evaluating this argument, we have considered the amicus brief submitted by appellate government counsel for the United States Army and find it most persuasive. We hold that the word "entitled" which is employed in Article 41(b), as well as 28 U.S.C. § 1870 and Fed.R.Crim.P. 24(b), provides no discretion to a trial judge to award additional peremptory challenges. *United States v. Gullion,* 575 F.2d 26 (1st Cir.1978); *United States v. Palumbo,* 401 F.2d 270, 275 (2d Cir.1968), *cert. denied,* 394 U.S. 947, 89 S.Ct. 1281, 22 L.Ed.2d 480 (1969); *Estes v. United States,* 335 F.2d 609 (5th Cir.1964); *Blount v. Plovidba,* 567 F.2d 583, 585 (3d Cir.1977).

In our opinion, Congress was quite capable of drafting a statute which would expressly impart to the military judge the discretionary power to grant additional peremptory challenges at courts-martial. *See* Article 64, UCMJ, 10 U.S.C. § 864. This conclusion is buttressed by the fact that Congress expressly provided authority for such permissible peremptory challenges in criminal cases involving multiple defendants before federal civilian courts. Fed.R. Crim.P. 24(b).[6] *See United States v. Cald-*

---

gent exercise of his statutory right to a peremptory challenge. *Cf. Pointer v. United States,* 151 U.S. 396, 14 S.Ct. 410, 38 L.Ed. 208 (1894); *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892).

4. The reason proffered for this disfavor is "the interests and circumstances of the military service will not at all times permit an equal facility of replacing a member as exists in the case of a challenged juror in the civil courts." W. De-Hart, *Observations on Military Law, and the Constitution and Practice of Courts-Martial* 118 (1846). *See* W. Winthrop, *Military Law and Precedents* 206 (2d ed. 1920 Reprint); G. Davis, *A Treatise on the Military Law of the United*

*States* 86 (1913); Congress, to a limited extent, rejected this reasoning in 1920. *See* Brown, *The Crowder-Ansell Dispute: The Emergence of General Samuel T. Ansell,* 35 Mil.L.Rev. 1, 24–26 (1967).

5. We do note that Congress has not been overly generous in granting this privilege to a military accused. *See* ABA Standards, Trial by Jury, § 2.6, Commentary, p. 72 (Approved Draft 1968).

6. Fed.R.Crim.P. 24(b), states in pertinent part;
 If there is more than one defendant, the court may allow the defendants additional peremp-

*well,* 543 F.2d 1333, 1345 n. 47 (D.C.Cir. 1974), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976). This specific and limited authorization [7] seriously undermines the argument that Congress intended the word "entitled" in these peremptory-challenge statutes to impart a similar discretionary power in cases involving a single defendant. *Cf. Blount v. Plovidba, supra* at 587 (Hunter, J., dissenting). Several decisions cited for implying a contrary conclusion are not persuasive, since they did not particularly address this question or find the trial judge committed error in denying a single defendant additional peremptory challenges. *See United States v. Bentley,* 503 F.2d 957 (5th Cir.1974); *United States v. LePera,* 443 F.2d 810 (9th Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 326, 30 L.Ed.2d 275 (1971).

▌ Appellant also asserts that 18 U.S.C. § 4244 is statutory authority empowering the military judge in his discretion to grant a defense request for an additional peremptory challenge. This provision states in pertinent part:

A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

Appellate defense counsel in his final brief claims "that the original members of the Court admitted receiving notice of the finding that appellant was mentally competent to stand" trial. He also notes that the trial "judge recognized ... the prejudicial nature of the information disseminated ... by the news media" with respect to the

seven-month delay in appellant's trial. Accordingly, he asserts that the trial judge erred when he failed to grant an additional peremptory challenge as a corrective measure to cure any prejudice resulting from his previous ruling concerning appellant's mental competency to stand trial.

This argument is clearly without merit. In the first place, it was not raised at trial, and not a single case has been offered to this Court to support the application of this statute in the manner suggested by appellate counsel. Second, this Court in the seminal case of *United States v. Wimberley,* 16 U.S.C.M.A. 3, 36 C.M.R. 159 (1966), held that this particular federal statute was not applicable to trials by courts-martial. *Id.* at 12, 36 C.M.R. at 168. In any event, appellate counsel did not particularly indicate, and we cannot discover, where in the record the original members admitted receiving notice of the trial judge's finding that appellant was mentally competent to stand trial. *Cf. Taylor v. United States,* 222 F.2d 398, 403 (D.C.Cir.1955). Finally, defense counsel at trial was expressly invited by the Government to move for a mistrial on the basis of pollution of the jurors by the media, and he declined this offer. No further consideration of this argument is warranted.

The defense finally contends that the trial judge was authorized to grant an additional peremptory challenge in this case pursuant to his responsibility to insure appellant a fair court-martial. Article 39; para. 39*b,* Manual, *supra; United States v. Graves,* 1 M.J. 50 (C.M.A.1975); *see also* Fed.R.Crim.P. 2, 57(b). It is broadly asserted that this responsibility was triggered by

---

tory challenges and permit them to be exercised separately or jointly.

7. The language noted in footnote 6 has not always been interpreted in a limited fashion by the courts. *See United States v. Haldeman,* 559 F.2d 31, 79–80 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *United States v. Tucker,* 526 F.2d 279, 283 (5th Cir.), *cert. denied,* 425 U.S. 958, 96 S.Ct. 1738, 48 L.Ed.2d 203 (1976); *United States v. Potts,* 420 F.2d 964, 965 (4th Cir.), *cert. denied,* 398 U.S. 941, 90 S.Ct. 1855, 26

L.Ed.2d 276 (1970); *cf. United States v. Gleason,* 616 F.2d 2, 29 (2d Cir.1979), *cert. denied,* 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *United States v. Projansky,* 465 F.2d 123, 139–41 (2d Cir.), *cert. denied,* 409 U.S. 1006, 93 S.Ct. 432, 34 L.Ed.2d 299 (1972); *New England Enterprises Inc. v. United States,* 400 F.2d 58, 68 (1st Cir.1968), *cert. denied,* 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed.2d 581 (1969). Yet, the absence of such language in the Uniform Code of Military Justice obviates any need for us to address this question further.

circumstances in this case which raised signs of improper command motives in the process of detailing court members. *See generally United States v. Hedges,* 11 U.S. C.M.A. 642, 29 C.M.R. 458 (1960); *United States v. Sears,* 6 U.S.C.M.A. 661, 20 C.M.R. 377 (1956). Specifically, it is suggested that detailing five new members, when one was sufficient to establish a quorum, was an attempt to negate appellant's right to a peremptory challenge.

This argument has no basis in fact. Article 29(b) states:

> Whenever a general court-martial . . . is reduced below five members, the trial may not proceed unless the convening authority details new members sufficient in number to provide not less than five members.

At no time did trial defense counsel object to the detailing of additional members to serve on this court or to the number of members detailed. Furthermore, he never even suggested to the trial judge that this detail of additional members constituted a deliberate effort by the convening authority to negate his right to a peremptory challenge. Finally, on three separate occasions, trial defense counsel declined invitations from either the trial judge or the prosecutor to move for a mistrial, a significantly more effective remedy. Under these circumstances, the trial judge had no reason to believe that the detailing process in this case was tainted by improper motives on the part of the convening authority.

## II

The second granted issue embraces several questions of law, none of which was raised at trial by objection of defense counsel. Appellate defense counsel now asserts that the testimony of three government expert witnesses, Lieutenant Commander E.T. Anderson, Commander A.F. Miller, and Dr. D.F. Muhich, was improperly admitted by the trial judge. In particular, he belatedly challenges the admission of each psychiatrist's medical opinion that appellant was mentally responsible at the time of the charged offenses and recitation of statements purportedly made by appellant that he recalled the events constituting these offenses. In addition, appellate counsel objects to the testimony of these witnesses as to statements purportedly made by appellant which implicated him in the charged offenses.

In his brief appellate counsel has proffered a host of reasons why the above testimony was not admissible for any purpose at appellant's court-martial. However, his particular concern is that this testimony should not have been admitted on the question of appellant's mental responsibility at the time of the offense. Para. 120a, Manual, *supra.* He avers that appellant's insanity defense was substantially prejudiced by this testimony. Article 59(a), UCMJ, 10 U.S.C. § 859(a). In the alternative, he argues that if this testimony was admissible on the above question, an appropriate limiting instruction was required to avoid prejudice on any other issue pertaining to his guilt of the charged offenses. *See* para. 138e, Manual, *supra.*

Before addressing the particular reasons proffered by appellate counsel for the inadmissibility of this testimony, some background is needed. It is necessary to appreciate the circumstances in which the government psychiatrists examined appellant and in which these prosecution experts testified at trial. *See generally United States v. Parker,* 15 M.J. 146 (C.M.A.1983).

Shortly after the charged offenses in January 1978, defense counsel retained two civilian psychiatrists to assist in the preparation of the defense. On January 11, 1978, he notified trial counsel and the convening authority of this fact and requested a delay in the convening of a sanity board which he understood trial counsel intended to request. On February 7, 1978, appellant's counsel requested that a psychiatric evaluation of appellant be conducted by a board of medical officers. A copy of this request is not included in the record of trial and some dispute exists as to whether the defense requested that this board conduct anything more than an inquiry into appellant's competence to stand trial.

In any event, a sanity board was convened on February 7, 1978. Lieutenant Commander A.N. Labrador, Lieutenant Commander Anderson, and Commander Miller examined appellant and issued their report on March 8, 1978. The board opined that appellant was mentally competent to stand trial and mentally responsible at the time of the charged offenses. Trial began on March 21, 1978, and defense counsel in his opening argument clearly indicated that he intended to raise an insanity defense and call expert psychiatric witnesses to support this defense. As indicated earlier in this opinion, appellant's trial was stopped in April 1978, because of the trial judge's finding that reasonable doubt existed as to appellant's mental competence to stand trial. The convening authority suspended further action in this case on May 16, 1978. Sometime in June 1978, the convening authority directed appellant be sent to the Springfield Medical Center for Federal Prisoners, relying on 18 U.S.C. § 4244 or § 4246. Appellant remained at that institution until November 1978 and was examined by Dr. Muhich during his stay.

As indicated earlier, appellant was returned to military authorities in November 1978. After a hearing, the military judge found that appellant was competent to stand trial. Defense counsel, again in his opening argument, indicated that he would rely on an insanity defense supported by defense psychiatrists. The Government presented its case-in-chief and was permitted to call Lieutenant Commander Anderson, a government rebuttal witness, out of order because of scheduling problems. The defense then presented its expert witnesses and the Government finally called Dr. Muhich and Commander Miller in rebuttal.

One reason proffered by appellate defense counsel for the inadmissibility of the testimony of all three government witnesses is that it was based on statements taken from appellant without providing him adequate advice as to his legal rights. *See*

*generally United States v. Tempia,* 16 U.S. C.M.A. 629, 37 C.M.R. 249 (1967). He asserts that Lieutenant Commander Anderson and Commander Miller, as military officers, and Dr. Muhich, as an agent of the military, were required to provide such warnings prior to conducting their psychiatric examinations of appellant. Article 31(b), UCMJ, 10 U.S.C. § 831(b). Absent such warnings, he avers that their testimony was inadmissible for any purpose at this court-martial. Article 31(d).

■ We note at the offset that the Court of Military Review found that the record reflected appellant was adequately advised of his legal rights under Article 31 by Lieutenant Commander Anderson and Commander Miller. In the absence of an objection at trial by defense counsel, we agree. In any event, it was quite clear from the beginning of this case that the defense intended to raise the issue of appellant's sanity at the time of the offense and employ its own expert witnesses for this purpose. The defense did so in the present case by relying on the testimony of Dr. W.R. Griswold, Dr. T.A. Rodgers, and Dr. P.U. Strauss. Since appellant chose to raise the insanity defense in this manner, the testimony of the three government psychiatrists was not inadmissible in rebuttal on this question because of any perceived failure to comply with Article 31. *See United States v. Parker, supra; United States v. Frederick,* 3 M.J. 230 (C.M. A.1977); *United States v. Schell,* 18 U.S.C. M.A. 410, 40 C.M.R. 122 (1969); *United States v. Wilson,* 18 U.S.C.M.A. 400, 40 C.M.R. 112 (1969). For this same reason, we reject appellate counsel's argument that the admission of the testimony of these government psychiatrists for this purpose violated the fifth or sixth amendments. *See Estelle v. Smith,* 451 U.S. 454 (1981); *United States v. Parker, supra* at 156 (Fletcher, J., concurring in the result).

Another reason [8] proffered for the exclusion of Dr. Muhich's testimony at appellant's court-martial is that it was barred by

---

8. Appellant's argument that Dr. Muhich's testimony contained inadmissible hearsay was rejected by the Court of Military Review, and no

good cause has been offered for us to question its reading of the record of trial.

a federal statute. Appellate counsel notes that Dr. Muhich was a civilian psychiatrist employed by the United States Bureau of Prisons. He further notes that Dr. Muhich examined appellant at the Springfield Medical Center for Federal Prisoners pursuant to the convening authority's referral under 18 U.S.C. § 4244 or § 4246. Accordingly, counsel argues that no statements made by appellant during these examinations or any opinion based on these statements may be admitted at his court-martial on the issue of his mental responsibility at the time of the offense. 18 U.S.C. § 4244.

■ A threshold question we must address is whether the exclusionary rule provided in 18 U.S.C. § 4244 was applicable to appellant's trial by court-martial. The Government argues that it was not and cites the decision of this Court in *United States v. Wimberley, supra.* That decision does state that this exclusionary rule is not applicable at a court-martial, but its rationale is based in part on its conclusion that Congress "intended [18 U.S.C. § 4244] to apply only to the regular Federal criminal courts." *Id.* at 12, 36 C.M.R. at 168. Here, appellant was referred by the convening authority to this federal institution for psychiatric examinations on the express basis of 18 U.S.C. § 4244 or § 4246. In our opinion, the decision in *United States v. Wimberley, supra,* is not controlling, and in the absence of meaningful argument from the Government addressing the particular circumstances of the present case, we will assume the exclusionary rule provided in this statute is applicable.

■ The next question we will address with respect to Dr. Muhich's testimony concerns the intended scope of 18 U.S.C. § 4244.[9] Appellate defense counsel broadly asserts, without citing any authority, that this statute bars not only the admission at trial of statements made by an accused undergoing such psychiatric examinations, but also any opinions as to his mental responsibility at the time of the offense which were based on these statements. However, the language of the statute is particular, excluding only a "statement made by the accused" and "[a] finding by the judge that the accused is mentally competent to stand trial." In view of counsel's failure to justify his interpretation of this statute and persuasive authority to the contrary, we must reject his broad construction of this statute. *See United States v. Bondurant,* 689 F.2d 1246, 1249 (5th Cir.1982); *United States v. Cassidy,* 571 F.2d 534, 537 (10th Cir.), *cert. denied,* 436 U.S. 951, 98 S.Ct. 2859, 56 L.Ed.2d 793 (1978); *Edmonds v.*

**9.** This statute states:

§ 4244. *Mental incompetency after arrest and before trial*

Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court. For the purpose of the examination the court may order the accused committed for such rea-

sonable period as the court may determine to a suitable hospital or other facility to be designated by the court. If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto. No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding. A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury.

*United States,* 273 F.2d 108, 114 (D.C.Cir. 1959).

 It is now possible to address appellate counsel's remaining contention concerning Dr. Muhich's testimony. He avers that 18 U.S.C. § 4244 bars admission at this trial of any statements made by appellant to Dr. Muhich during an examination ordered on the basis of this statute. In particular, he challenges this witness' testimony that appellant "stated . . . he could remember everything that happened that day," and he talked about the incidents of the day. Counsel contends that this testimony critically undermined appellant's insanity defense because the defense experts based their opinions on appellant's statements that he could not recall the events constituting the charged offenses.

Counsel's argument on its face appears well-founded, but on closer examination, it fails to provide a substantial basis for overturning appellant's conviction. He admits that defense counsel at trial did not object to this testimony on the basis of 18 U.S.C. § 4244. He also admits that trial defense counsel later cross-examined this government rebuttal witness as to what appellant had said. In addition, we note that Dr. Muhich examined appellant after defense counsel notified the convening authority and the court that he intended to raise an insanity defense by means of his own experts (*see* Fed.R.Crim.P. 12.2(c)), and Dr. Muhich testified only after the defense psychiatrists had testified to appellant's genuine inability to recall the events on the day of the offenses. We are inclined to find waiver in these circumstances. *United States v. Madrid,* 673 F.2d 1114, 1120 (10th Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 96, 74 L.Ed.2d 88 (1982); *United States v. Smith,* 404 F.2d 720, 728 (6th Cir.1968); *Bailey v. United States,* 248 F.2d 558, 560 (D.C.Cir.1957), *cert. denied,* 355 U.S. 919, 78 S.Ct. 351, 2 L.Ed.2d 279 (1958). In any event, both Lieutenant Commander Anderson and Commander Miller properly testified that appellant stated he remembered the events constituting the charged offenses, and Dr. Muhich's testimony on the same point was simply cumulative. Any error which might have occurred in the admission of Dr. Muhich's testimony for this purpose was harmless. Article 59.

 The final contention of appellate counsel is that fatal error occurred in appellant's court-martial when the trial judge failed to give appropriate limiting instructions. Para. 138e, Manual, *supra.* We have endorsed such a measure in the past to avoid undue prejudice inuring to an accused with respect to other issues at the trial. *See United States v. Frederick, supra* at 234 n. 7. In appellant's case there was no such possibility. Defense counsel made it quite clear on several occasions that the only issue in this trial was appellant's mental responsibility at the time of the offense. The Court of Military Review pointed out and this Court agrees that the Government's evidence as to appellant's guilt was overwhelming. In addition, the defense failed to offer evidence controverting the Government's proof. Finally, defense counsel at trial did not request such an instruction. This contention must be rejected. *See United States v. Parker, supra.*

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge COOK concurs.

EVERETT, Chief Judge (dissenting):

In *United States v. Harris,* 13 M.J. 288 (C.M.A.1982), the principal opinion concluded that the challenge for cause of a member should have been sustained. However, the member had been peremptorily challenged and did not serve on the court-martial. After asserting "that the right to peremptory challenge is an important codal right," the opinion nonetheless affirmed the conviction, "because of the lack of any evidence in the record that appellant otherwise desired to exercise this right [of peremptory challenge]." *Id.* at 292. Because I was unclear as to the "evidence" which appellant should have provided of his wish to exercise his peremptory challenge "otherwise," I speculated that "[p]erhaps the principal opinion

... [was] subtly implying that a trial judge has the inherent authority to allow additional peremptory challenges." *Id.* at 294 n. 3 (Everett, C.J., dissenting).

In the present case, the majority now repudiates any such implication and rules that the use of the term "entitled" in Article 41(b) of the Uniform Code of Military Justice, 10 U.S.C. § 841(b), indicated a congressional intent that no additional peremptory challenges could be allowed under any circumstances. I have some question that the limitation was intended to be so rigid. For example, I believe that the judge is free to allow additional peremptory challenges if the parties stipulate that he may do so; and there may be other situations where, in the exercise of his sound discretion and in order to assure a fair trial, the trial judge may allow additional peremptory challenges.

In this connection, I note that the American Bar Association's Standards for Criminal Justice were amended in 1978 to include this paragraph:[1]

(c) Whenever there is a substantial likelihood that, due to pretrial publicity, the regularly allotted number of peremptory challenges is inadequate, the court shall permit additional challenges to the extent necessary for the impaneling of an impartial jury.

The addition is explained in this manner:

Paragraph (c) recommends permitting additional peremptory challenges whenever, due to pretrial publicity, the regular allotment of challenges is likely to be inadequate. This standard, like preceding ones, will no doubt lengthen some trials and will be subject to abuse. Nevertheless, in cases involving substantial pretrial publicity, the usual number of peremptories is frequently inadequate. A flat limitation on peremptories under such circumstances would seriously jeopardize the objective of voir dire—jury impartiality.[22]

[22] Although the Federal Rules of Criminal Procedure have limited the number of peremptory challenges for years, some courts have found it necessary to ignore that limit in cases tried in an atmosphere of highly prejudicial publicity. *See, e.g., United States v. Bonanno,* 177 F.Supp. 106, 123 (S.D.N.Y.1959), *revd. on other grounds sub nom. United States v. Bufalino,* 285 F.2d 408 (2d Cir.1960); *People v. Speck,* 41 Ill.2d 177, 213, 242 N.E.2d 208, 227 (1968). Adherence to such a procedure may well be constitutionally required. Cf. *Groppi v. Wisconsin,* 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971).

However, even if an inflexible interpretation of Article 41(b) is adopted, I still conclude that appellant had the right to an additional peremptory challenge under the circumstances of this case. As I read the statutory language that "[e]ach accused and the trial counsel is entitled to one peremptory challenge," this entitlement applies with respect to any person who sits as a member of the court-martial; accordingly, no person can sit on a court-martial who has never been exposed to peremptory challenge by the parties. Thus, if a peremptory challenge has been exercised and thereafter—because the number of members is below the statutory minimum or otherwise—new members are appointed, the peremptory challenge is revived with respect to those new members.

Of course, my construction of Article 41(b) is neither new nor unique. More than a quarter century ago, a highly regarded textbook on military law explained:

If the membership of the court is substantially changed by substitution of new members after the regular challenge procedure, each party is entitled to another peremptory challenge in regard to the new members. Article 41 which limits the peremptory challenges to one plainly contemplates an original panel. Cf. Article 29(a), UCMJ.

B. Feld, *A Manual of Courts-Martial Practice and Appeal* 66 (1957).

[1] *See* ABA, Standards *Fair Trial and Free Press* § 8–3.5—Selecting the jury (2nd Ed.1978) (footnote omitted). Except for the addition of this paragraph, the present Standard, which was approved by the American Bar Association's House of Delegates on August 9, 1978, substantially conforms to the original Standard 3.4.

As the majority observes, a convening authority's addition of new members to a court-martial does not create a new court-martial or commence a new trial. *See generally McClaughry v. Deming,* 186 U.S. 49, 63–66, 22 S.Ct. 786, 791–793, 46 L.Ed. 1049 (1902); *Runkle v. United States,* 122 U.S. 543, 556–57, 7 S.Ct. 1141, 1146–1147, 30 L.Ed. 1167 (1887). However, that proposition does not affect my premise that in Article 41(b), Congress intended for *every* member who sits on a court-martial to be subject to a peremptory challenge by each party. The only way to effectuate this legislative purpose is to hold that, if the convening authority exercises his statutory right to add members to a court-martial, his action confers upon each party the corresponding right to exercise one peremptory challenge as to the added members.

The legislative history of the Code, as amended in 1968, supports—rather than refutes—this interpretation. In enacting Article 37 of the Code, 10 U.S.C. § 837, in 1950, and in expanding this Article in 1968, Congress made clear its concern about command influence. By granting each accused a peremptory challenge under Article 41(b), Congress sought to provide added protection against such influence. The majority's interpretation of Article 41(b) now dilutes that protection—a result which is inconsistent with the legislative goals.

The majority speaks of "the historical disfavor with which peremptory challenges have been viewed at courts-martial." 17 M.J. 361, 365, 366. Certainly at one time such challenges were in disfavor; indeed, they simply were not authorized. However, that was prior to enactment of the Uniform Code. On the other hand, in drafting that Code, Congress rejected proposals that there be a prescribed number of peremptory challenges for "each side," as is the case with Fed.R.Crim.P. 24(b), and, instead, enacted a more liberal provision whereunder peremptory challenges are guaranteed to "[e]ach accused."[2] *See* Article 41(b). At

---

**2.** The original draft of Article 41(b), provided:
> The accused and trial counsel shall each be entitled to one peremptory challenge.

Proposed Article 41(b), Hearings on H.R. 2498 before a Subcommittee of the House Armed Services Committee, 81st Cong., 1st Sess. 576 (1949), reprinted in *Index and Legislative History of the Uniform Code of Military Justice.* It was suggested by Colonel John P. Oliver, Legislative Counsel of the Reserve Officers Association, who in commenting on this language, stated that "[t]he word *accused* is both singular and plural," and, accordingly, if read in the former number only one peremptory challenge could be exercised by the defense side of the aisle even if there were several accused being tried jointly. *Id.* at 756. This concern was echoed by Mr. Robert D. L'Heureux, Chief Counsel of the Senate Banking and Currency Committee, who noted that then-current law permitted "only one peremptory challenge . . . for all the accused together" in a court-martial. He suggested that, if this was what the draftsmen intended, existing language should be retained; but if the draftsmen intended to allow each accused in a trial a peremptory challenge, the provision should read "*each* accused." *Id.* at 821. After Representative Elston had suggested an amendment which would give each accused his own challenge, Mr. Felix Larkin, the Executive Secretary of the drafting committee, stated that it had been the original intent of the draftsmen simply to adopt the Army practice at the time—which he submitted was consistent with the "more common civilian practice"—and to allow each *side* one peremptory challenge. However, he did concur in Mr. L'Heureux' suggestion that clarifying language was needed, whichever practice the committee adopted. *Id.* at 1026.

Representatives of the various services opposed any change in the intent of the draftsmen to restrict the defense side to one peremptory challenge. Captain Woods of the Navy argued that increasing the number of peremptory challenges by affording one to each accused would exacerbate a problem already perceived in having enough officers available to compose a court. *Id.* at 1027. Colonel Dinsmore of the Army, opining that to provide each accused his own peremptory challenge would be counterproductive, agreed that the real problem was "having members available for the court." Major Alyea of the Air Force concurred that the Army position was a sound one, although his Service already provided each accused in a common trial a peremptory challenge. *Id.* at 1028.

Nonetheless, Representative Elston proposed an amendment resulting in language substantially like that which appears today. His amendment was received without objection, *id.* at 1029, and the Report of the full Committee explained that the new provision would authorize "one peremptory challenge by the trial counsel and one peremptory challenge for *each* accused." H.R.Rep. No. 491, 81st Cong., 1st

least in this respect, military justice has viewed the peremptory challenge with more—not less—favor than have the Federal courts.

The majority refers to an ancient text to explain the reason for the alleged "historical disfavor" for peremptory challenges in military law. This reason is that "the interests and circumstances of the military service will not at all times permit an equal facility of replacing a member, as exists in the case of a challenged juror in the civil courts." W. DeHart, *Observations on Military Law, and the Constitution and Practice of Courts-Martial* 118 (1846). However, while military exigencies might explain why an accused should not be "entitled" to more than one peremptory challenge as a

matter of course, it fails to justify denying an accused the meaningful exercise of the one peremptory challenge which Congress chose to grant him.

In summary, I conclude that, under Article 41(b), when the constitution of a court-martial is changed by the convening authority's addition of new members to the original panel, all parties are "entitled" to exercise a peremptory challenge as to the added members. The plain language of the statute is consistent with this construction; the legislative history does not suggest a different congressional intent; and, as even the majority concedes, this construction makes sense "in terms of equity and common sense." 17 M.J. at 365. That, after all, is what the law is all about.

Sess. 22 (1949), reprinted in *Index and Legislative History of the Uniform Code of Military Justice* (emphasis added). Despite similar resistance to the change in the testimony during the Senate hearings, *see* Hearings on S. 857 and H.R. 4080 before a Subcommittee of the Senate Armed Services Committee, 81st Cong., 1st Sess. 36, 111, and 150 (1949), reprinted in *Index and Legislative History of the Uniform*

*Code of Military Justice,* the Senate apparently accepted the Elston Amendment, because the Senate Report explained Article 41(b) as "authoriz[ing] one peremptory challenge by the trial counsel and one peremptory challenge for *each* accused. S.Rep. 486, 81st Cong., 1st Sess. 18 (1949), reprinted in *Index and Legislative History of the Uniform Code of Military Justice.*